United States District Court
Southern District of Texas
**ENTERED**
February 03, 2016
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **ALPHA K9 PET SERVICES, ET AL.,**[1] | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. B: 15-95** |
| | § | |
| **JEH JOHNSON, ET AL.,** | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 22, 2015, twenty-four Plaintiffs joined together and filed a single complaint against the following defendants: Secretary of Homeland Security Jeh J. Johnson; United States Citizenship and Immigration Services Director León Rodríguez; Secretary of Labor Thomas E. Perez; Secretary of State John F. Kerry – all in their official capacities[2] – as well as the Department of Homeland Security ("DHS"), the Department of Labor ("DOL"), and the State Department. Dkt. No. 1.  The complaint alleges that Defendants acted unlawfully

---

[1] The Plaintiffs can be divided, generally, into two groups.  The following Plaintiffs are businesses who utilize the H-2B visa system to hire temporary workers: Alpha K9 Pet Services; Bennett's Amusement, Inc.; Big Rock Amusements, LLC; Black Magic Enterprises, LLC; Chapel Valley Landscape; Chuckwagon, Inc.; A.H. Cornell & Son, Inc.; Dandy Souvenirs; Enviro-Scape, LLC; Fast Freight, Inc.; Landsculpt, Inc.; Midway West Amusements; Miller Spectacular Shows, Inc.; Mitchell Lawn & Landscape, Inc.; Naylor Landscape Management, Inc.; Peachtree Rides; Plantscape, Inc.; Premium Shows of America, LLC; S&S Amusements, Inc.; Sharp Concepts, Inc.; and Whiteville Rice Company, Inc. (hereafter "Business Plaintiffs").
The following Plaintiffs are businesses who act as agents for businesses during the H-2B visa process by preparing and filing paperwork on behalf of the businesses: Amigos Labor Solutions, Inc.; JKJ Workforce Agency, Inc.; and VTB Solutions, Inc. (hereafter "Agent Plaintiffs").  Any reference to "Plaintiffs" in this report and recommendation is a reference to all of the listed Plaintiffs.

[2] Suing the individuals in their official capacities is merely a suit against the agency.  Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).  Accordingly, the only actual defendants in this case are the Department of Homeland Security, the Department of Labor and the State Department.

by refusing to adjudicate and approve Plaintiffs' H-2B visa petitions during the 2015 fiscal year. Id.  It also alleged that DHS acted unlawfully by deleting certain regulations without first allowing notice and comment regarding the deletion.

On August 13, 2015, Defendants filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). Dkt. No. 9.  That motion is currently pending before the Court. Plaintiffs filed a response – Dkt. No. 16 – and Defendants filed a reply. Dkt. No. 17.

After reviewing the record and the relevant case law, the Court **RECOMMENDS** that the motion to dismiss be granted.  Plaintiffs lack standing to pursue their claims and even if standing otherwise existed, they have failed to state a claim upon which relief can be granted.

# I. Background

As with all things related to immigration in this country, the issues raised by Plaintiffs are neither clear nor simple.  To better understand Plaintiffs' claims, the Court first sets out the temporary visa system and its regulatory framework.  After that, the Court will turn to resolution of Plaintiffs' claims.

## A. Legal Background

Federal law permits a person who has "a residence in a foreign country which he has no intention of abandoning" to "temporarily" work in the United States, so long as "unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii)(b).  The visas that are issued to conduct such work are colloquially known as H-2B visas.  The Government may only issue H-2B visas to persons "whose employment is not adversely affecting the wages and working conditions of United States workers." 8 C.F.R. § 214.2(h)(6)(I).  In this case, Plaintiffs were seeking workers in low-skilled labor positions, such as landscapers and carnival workers, who have historically been the recipients of H-2B visas.

Congress charged the Attorney General, "after consultation with appropriate agencies of the Government," with determining which aliens should be issued H-2B visas. 8 U.S.C. § 1184(c)(1).  The Attorney General lawfully delegated that authority to the Immigration and

Naturalization Service ("INS"). 8 U.S.C. § 1103(a)(4) (1996) (amended 2002).  In 2002, Congress abolished the INS and charged the newly-formed Department of Homeland Security ("DHS") with determining which aliens should be granted H-2B visas. 6 U.S.C. § 202(4).

A petitioner – who is defined as "a United States employer, a United States agent, or a foreign employer filing through a United States agent" – must file for a "temporary labor certification" as part of the H-2B visa process. 8 C.F.R. § 214.2(h)(6)(iii)(A)-(B).  This temporary labor certification is issued by the Department of Labor ("DOL"). Id.  "The labor certification shall be advice to [DHS] on whether or not United States workers[,] capable of performing the temporary services or labor[,] are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers." Id.

An approved petition for H-2B visas is valid "for a period of up to one year." 8 C.F.R. § 214.2(h)(9)(iii)(B).  Congress has capped the number of H-2B visas at 66,000 for a fiscal year. 8 U.S.C. § 1184(g)(1)(B).  Congress has further mandated that a maximum of 33,000 visas be allocated for workers whose work begins in the first half of the fiscal year, which runs from October to March. 8 U.S.C. § 1184(g)(10).  The remaining 33,000 visas are allocated for the workers who begin their work in the second half of the fiscal year. Id. Each petitioner must apply yearly for H-2B visas.

As part of the H-2B visa process, the petitioner is required to provide either (1) a certification from DOL stating that there are no qualified U.S. workers and that U.S. wages and employment would not be affected; or (2) "[a] notice detailing the reasons why such certification cannot be made. Such notice shall address the availability of U.S. workers in the occupation and the prevailing wages and working conditions of U.S. workers in the occupation." 8 C.F.R. § 214.2(h)(6)(iv)(A)(1)-(2).

Under earlier regulations, if DOL issued the latter response – that a certification cannot be made – then the petitioner could file a "countervailing evidence" petition in writing

with DHS. 8 C.F.R. § 214.2(h)(6)(iv)(D) (2007).  The countervailing evidence "must show that qualified workers in the United States are not available, and that the terms and conditions of employment are consistent with the nature of the occupation, activity, and industry in the United States." Id.  In other words, the employer was required to seek a certification from DOL, but if that certification was not issued, the employer was afforded the opportunity to establish directly to DHS that the employer met the required standard, despite DOL's failure to issue the certification.

In 2008, DHS issued a rule which stated that it would not process any petitions that did not include a temporary labor certification from DOL. 73 Fed. Reg. at 78,127, 78,129 (December 19, 2008).  DHS did not include any method by which a petitioner could submit a countervailing evidence petition. See 8 C.F.R. 214.2(h)(6)(iii)(C) (noting that a petitioner may not file a H-2B petition with DHS unless it "has obtained a favorable labor certification determination" from DOL).  On that same date, DOL issued rules outlining how petitioners could present evidence to DOL and how petitioners could appeal – within DOL – DOL's initial decision denying the required certification. 73 Fed. Reg. 78,020 (Dec. 19, 2008) (hereafter "2008 DOL rules").

The 2008 DHS regulations, however, still included a section that discussed the use of countervailing evidence petitions. 8 C.F.R. § 214.2(h)(9)(iii)(B)(2) (2009) (hereafter "countervailing evidence provision").  This section, which was contained in earlier versions of the regulation, stated that, "[i]f a petition is submitted containing a notice from the Secretary of Labor . . . that certification cannot be made, and is not accompanied by countervailing evidence, the petitioner shall be informed that he or she may submit the countervailing evidence in accordance with paragraphs (h)(6)(iii)(E) and (h)(6)(iv)(D) of this section." Id.  Despite the language apparently permitting the submission of countervailing evidence, paragraphs (h)(6)(iii)(E) and (h)(6)(iv)(D) made no mention of countervailing evidence petitions. See 8 C.F.R. § 214.2 (h)(6)(iii)(E) (requiring that the petitioner "obtain[] a favorable determination from the Secretary of Labor" before proceeding) & 8 C.F.R. §

4

214.2 (h)(6)(iv)(D) (requiring petitioners to provide employment start dates).  Thus, there appeared to be a disconnect between the countervailing evidence provision and the remainder of the regulation.

In 2012, DOL issued additional rules concerning H-2B certifications.  Among those rules were additional protections for U.S. workers (such as requiring that U.S. workers who perform the same tasks as H-2B visa workers for the same employer receive the same wages and benefits as the H-2B workers). <u>Temporary Non–Agricultural Employment of H–2B Aliens in the United States</u>, 77 Fed. Reg. 10,038 (Feb. 21, 2012) (hereafter "2012 DOL rules").

In December 2014, a district court in the Northern District of Florida held that the 2012 DOL rules were invalid because only DHS has rulemaking authority over the H-2B visa program. <u>Bayou Lawn & Landscape Servs. v. Perez</u>, 81 F. Supp. 3d 1291, 1292 (N.D. Fla. 2014) <u>vacated</u> <u>and</u> <u>remanded</u> <u>sub</u> <u>nom</u>. <u>Bayou Lawn & Landscape Servs. v. Sec'y, U.S. Dep't of Labor</u>, 621 F. App'x 620 (11th Cir. 2015).  The district court enjoined DOL from enforcing the 2012 rules. <u>Id</u>.[3]

On March 4, 2015, that same district court – in a separate case – enjoined DOL from enforcing the 2008 DOL rules, finding that DOL lacked statutory authority to enact such regulations. <u>Perez v. Perez</u>, No. 3:14-cv-682 (N.D. Fla. Mar. 4, 2015) (hereafter "<u>Perez</u>"). The <u>Perez</u> decision did not address any of DHS's regulations.

On April 29, 2015, DHS and DOL "jointly" issued regulations concerning the H-2B visa program. <u>Temporary Non-Agricultural Employment of H-2B Aliens in the United States</u>, 80 FR 24042-01 (April 29, 2015) (hereafter "2015 DHS/DOL rules").  These rules were described as "virtually identical" to the 2012 DOL rules, which never contained a provision allowing the submission of countervailing evidence. <u>Id</u>.  Thus, the 2015 DHS/DOL

---

[3] The Eleventh Circuit dismissed the ensuing appeal as moot because DOL and DHS issued new regulations after the district court's decision. <u>Bayou Lawn & Landscape Servs. v. Sec'y, U.S. Dep't of Labor</u>, 621 F. App'x 620 (11th Cir. 2015).

rules did not include any kind of countervailing evidence provision that would allow a petitioner to appeal an adverse DOL certification ruling to DHS. Id.

Moreover, the new regulations deleted § 214.2(h)(9)(iii)(B)(2) – the countervailing evidence provision. The comments to the 2015 DHS/DOL rules states that the 2008 regulations "require[d] all H–2B petitions to be accompanied by an approved temporary labor certification." Id at 24050. It also explained that, "[d]ue to a drafting oversight . . . [,] DHS inadvertently left untouched the provisions at 8 CFR 214.2(h)(9)(iii)(B)(2), which should have been deleted." Id. Furthermore, the regulations stated that, pursuant to 5 U.S.C. § 553(b)(B), the countervailing evidence provision should be deleted without notice and comment, because it was merely "a housekeeping matter and a minor technical amendment." Id.

### B. Factual Background

Plaintiffs are 24 separate businesses that "have participated in the H-2B program annually for several years." Dkt. No. 1, p. 11.

As part of the 2015 H-2B visa application process, the Agent Plaintiffs filed labor certification applications with the Department of Labor on behalf of the Business Plaintiffs. Dkt. No. 1, p. 15. The Business Plaintiffs assert that they had "a time-sensitive need for labor to begin work on or before April 1, 2015." Id.

On March 4, 2015 – after the Perez decision was issued by the District Court in Florida – the Department of Labor announced that it would stop "processing and issuing H-2B labor certifications." Dkt. No. 1, p. 15. The Business Plaintiffs had labor certification applications pending at that time. Id. On March 19, 2015, the Department of Labor resumed processing the labor certification applications. Id.

On March 26, 2015, USCIS stopped accepting H-2B visa petitions on the basis that the statutory limits had been met. Dkt. No. 1, p. 22.

During the period in between March 4, 2015, and March 19, 2015, the Agent Plaintiffs filed countervailing evidence petitions with USCIS on behalf of the Business Plaintiffs, in

accordance with 8 C.F.R. § 214.2(h)(9)(iii)(B)(2). Dkt. No. 1, p. 15. The petitions included: a "notice from DOL that it was no longer issuing labor certifications and therefore certification cannot be made[;] documentation that the employer was offering the wage rate mandated by DOL[;] as well as documentation that the employer had conducted recruitment for U.S. workers in the manner and form prescribed by DOL." Id, p. 16.

These petitions were returned to Plaintiffs – on an unspecified date – and were rejected for failing to submit a labor certification from the Department of Labor. Dkt. No. 1, pp. 17-18. According to the complaint, USCIS held the "petitions for days or weeks without issuing a receipt notice, without issuing a case number, without issuing a 'Request for Evidence,' without considering or otherwise adjudicating" the petitions. Id.

The Business Plaintiffs assert that, in addition to failing to process the petitions, USCIS also failed to acknowledge receipt of the petitions. The complaint asserts that "[i]f the petitions . . . had been issued a receipt notice and assigned a case number by USCIS, the petitions would have been placed in the queue to be adjudicated for approval, and if approved the beneficiaries associated with the petitions would have then been eligible to obtain H-2B visas even if the visa cap was subsequently reached." Dkt. No. 1, p. 22.

According to a sworn affidavit from Shelly Sweeney, a Branch Chief for USCIS, fifteen Business Plaintiffs had subsequent H-2B visas petitions accepted and granted for the time period at issue in this case.[4] Dkt. No. 9-1. Six Business Plaintiffs were not listed in Sweeney's affidavit and presumably never had their petitions adjudicated; their petitions are moot for reasons discussed later in this report and recommendation.[5] The three remaining

---

[4] The Business Plaintiffs who had H-2B visa petitions granted are: Alpha K9 Pet Services; Bennett's Amusement, Inc.; Big Rock Amusements, LLC; Black Magic Enterprises, LLC; Chapel Valley Landscape; Chuckwagon, Inc.; Enviro-Scape, LLC; Fast Freight, Inc.; Landsculpt, Inc.; Midway West Amusements; Peachtree Rides; Plantscape, Inc.; Premium Shows of America, LLC; S&S Amusements, Inc.; and Whiteville Rice Company, Inc.

[5] Business Plaintiffs A.H. Cornell & Son, Inc., Dandy Souvenirs, Miller Spectacular Shows, Inc., Mitchell Lawn & Landscape, Inc., Naylor Landscape Management, Inc., and Sharp Concepts, Inc., were not listed as having their petitions approved or adjudicated.

Plaintiffs are Agent Plaintiffs, who had no petitions of their own that were filed, but filed petitions on behalf of other businesses.

### C. Procedural History

On May 22, 2015, the Agent Plaintiffs and Business Plaintiffs filed the instant complaint. Dkt. No. 1.  Plaintiffs have raised a number of claims, which are summarized  as follows: (1) USCIS's refusal to "consider, adjudicate and approve" their petitions violated the Administrative Procedures Act ("APA"); (2) the deletion of the countervailing evidence provision in the 2015 DHS/DOL rules, without notice and comment, violated the APA; (3) USCIS's refusal to "consider, adjudicate and approve" their petitions constituted an unlawful taking under the Fifth Amendment. Dkt. No. 1, pp. 26-27.  Plaintiffs seek: a declaratory judgment that USCIS violated the APA by refusing to adjudicate the petitions; a writ of mandamus directing the Defendants to issue H-2B visas in accordance with the petitions; a declaration  that the deletion of the countervailing evidence provision violated the APA; and an order requiring Defendants to permit countervailing evidence petitions. Dkt. No. 1, pp. 28-29.

On August 31, 2015, Defendants filed a motion to dismiss. Dkt. No. 9.  Defendants assert that Plaintiffs lack standing to challenge the deletion of the countervailing evidence provision because their alleged injury – the failure to accept adjudicate the petitions – would not be remedied by a favorable decision.  Defendants claim that the 2008 DHS rule changes required petitioners to have a labor certification from DOL before proceeding and that the Business Plaintiffs failed to receive such a certification before proceeding.

Furthermore, Defendants assert that even if standing did otherwise exist, there was good cause for not requiring notice and comment before deleting the countervailing evidence provision.  Defendants argue that Plaintiffs cannot maintain a takings claim because they have not been deprived of "a reasonable investment-backed expectation." Id.  Defendants also state that the requests for relief are moot because at least 15 of the Business Plaintiffs have already received visas.

On September 28, 2015, Plaintiffs filed a response to the motion to dismiss. Dkt. No. 16.  Plaintiffs assert that they have standing because they were injured by USCIS's refusal to adjudicate their initial petitions.  They also assert that DHS lacked good cause to forgo notice and comment before deleting the countervailing evidence provision.  Plaintiffs further state that they are entitled to mandamus and declaratory relief.

On October 13, 2015, Defendants filed a reply brief.

## II. Applicable Law

### A. Motion to Dismiss

The Court notes at the outset that Defendants did not expressly state whether their motion to dismiss was made pursuant to FED. R. CIV. P. 12(b)(1) or (b)(6).  Given that the motion addresses both jurisdictional and substantive issues with the complaint, the Court will assume it was made pursuant to both.

#### 1. 12(b)(1) Motion to Dismiss

A motion filed under "Rule 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE allows a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). A court may properly dismiss a claim for lack of jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Mississippi, Inc. V. City of Madison, Miss., 143 F.3d 1006, at 1010 (5th Cir. 1998).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Ramming, 281 F.3d at 161. The Court may look to the following to find a lack of jurisdiction: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. (citing Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir. 1996).

#### 2. 12(b)(6) Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests only the formal sufficiency of the

statements of the claims for relief.  It is not a procedure for resolving contests about the facts or merits of the case . . . . [T]he Court must take the plaintiffs' allegations as true, view them in a light most favorable to plaintiffs, and draw all inferences in favor of the plaintiffs." Askanase v. Fatjo, 828 F. Supp. 465, 469 (S.D. Tex. 1993) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Garrett v. Commonwealth Mortgage Corp. of Am., 938 F.2d 591, 593 (5th Cir. 1991)).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. at 570.  Consistent with this requirement, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 589.  "[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).  Whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon its judicial experience and common sense. Iqbal, 556 U.S. at 678.

### B. Standing

To establish standing, "a party must demonstrate the triad of injury in fact, causation, and redressability." Aransas Project v. Shaw, 775 F.3d 641, 648 (5th Cir. 2014) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998).  The plaintiff must plead facts showing a "concrete" injury that was caused by the defendant's conduct and "a likelihood that the requested relief will redress the alleged injury." Id.

 "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." K.P. v. LeBlanc, 627 F.3d 115, 123 (5th Cir. 2010) (alteration

and emphasis original).  Moreover – as discussed later – where injury is subject to repetition, but the time for redress is relatively short, the redressability issue is subject to different analysis.

"If a plaintiff lacks Article III standing, then a federal court lacks jurisdiction to hear the complaint." Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council, 364 F.3d 269, 272 (5th Cir. 2004).  The plaintiff bears the burden of establishing that standing exists. McConnell v. Fed. Election Comm'n, 540 U.S. 93 (2003).  "When a party challenges the facts on which jurisdiction depends, matters outside the pleadings, such as affidavits and testimony, are considered." Battaglia v. U.S., 495 F. App'x 440, 441 (5th Cir. 2012) (unpubl.) (citing Oaxaca v. Roscoe, 641 F.2d 386, 391 (5th Cir. 1981)).

### C. Administrative Regulations

"When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation." Decker v. Nw. Envtl. Def. Ctr., --- U.S. ---, ---, 133 S. Ct. 1326, 1337 (2013) (internal quotations omitted) (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)).  "It is well established that an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail." Decker at 1337.

"The courts have long recognized that administrative agencies may correct inadvertent, ministerial errors" without having to go through notice and comment. Chlorine Inst., Inc. v. Occupational Safety & Health Admin., 613 F.2d 120, 123 (5th Cir. 1980).

### D. Regulatory Takings

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, directs that private property shall not be taken for public use, without just compensation." Dennis Melancon, Inc. v. City of New Orleans, 703 F.3d 262, 269 (5th Cir. 2012) (internal quotations omitted).  The analysis of property under the Takings Clause rests "on citizens' historic understandings regarding the content of, and the State's power over, the 'bundle of rights' that they acquire when they take title to property." Lucas

v. S. Carolina Coastal Council, 505 U.S. 1003, 1004 (1992).

Some interests, no matter how important to the individual or business, do not rise to the level of a protected property interest. For example, "a protected property interest simply cannot arise in an area voluntarily entered into . . . which, from the start, is subject to pervasive Government control, because the government's ability to regulate in the area means an individual cannot be said to possess the right to exclude." Dennis Melancon at 272 (ellipses original, internal quotations omitted).

## III. Analysis

In analyzing the complaint, the Court must first consider whether any of the plaintiffs have standing or if their claims have been mooted by subsequent events. The Court concludes that all of the plaintiffs lack standing. This conclusion follows from the fact that the Plaintiffs have not shown that their claims are redressable in the 2015 H-2B visa season, which has already passed.

Even if the Plaintiffs had standing, they have not stated a claim upon which relief can be granted. Under Auer, DHS is entitled to deference in interpreting the countervailing evidence provision. DHS's interpretation – that the countervailing evidence provision, in the 2015 regulations, was of no effect, given that it conflicted with the all of the remaining provisions of the regulation – is a "reasonable agency interpretation" of its own rules. Additionally, the failure to delete the provision – in view of the fact that it conflicted with the remaining provisions of the regulation – leads to the conclusion that the failure was merely an administrative oversight, the correction of which did not require application of notice and comment. Accordingly, DHS did not err by failing to accept petitions submitted under the countervailing evidence provision; nor did it err by deleting that provision without notice and comment.

Finally, Plaintiffs have failed to state a claim upon which relief can be granted for a takings claim. Given the heavily-regulated nature of the H-2B visa process, the Plaintiffs have failed to demonstrate a protected property interest in their application or in receiving the visas.

**A. Standing & Mootness**

As previously noted, Plaintiffs have the burden of establishing standing, which is a prerequisite for jurisdiction. <u>Aransas Project</u>, 775 F.3d at 648.  Plaintiffs must plead facts showing injury, causation, and redressability. <u>Id</u>.  Even if the Court assumes that the first two elements are met, Plaintiffs have failed to establish redressability because the controversy has become moot.

Mootness is part of the standing doctrine; it requires that the elements of standing be present throughout the litigation. <u>Ctr. for Individual Freedom v. Carmouche</u>, 449 F.3d 655, 661 (5th Cir.2006).  "A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interest to maintain the litigation . . . .  A controversy can also become moot when the parties lack a legally cognizable interest in the outcome." <u>In re Scruggs</u>, 392 F.3d 124, 128 (5th Cir. 2004).  "A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." <u>Goldin v. Bartholow</u>, 166 F.3d 710, 717 (5th Cir. 1999).

In this case, none of the plaintiffs possess a legal interest sufficient to maintain the litigation.  There are three types of plaintiffs in this case: (1) Business Plaintiffs who received approved visas; (2) Business Plaintiffs who did not received approved visas; and, (3) Agent Plaintiffs.  The interests of each are addressed below.

**1. Business Plaintiffs With Visas**

As previously noted, fifteen of the Business Plaintiffs received approved visas for the 2015 hiring season. Dkt. No. 9-1.  Their request for declaratory and mandamus relief is moot.

These plaintiffs requested that the Court declare the Defendants' actions to be unlawful and enjoin the Defendants from "failing to receipt, consider, adjudicate and approve Plaintiffs' petitions that are the subject of this action." Dkt. No. 1, p. 28.  Even if the Court were to agree with the arguments of the Business Plaintiffs, they have already received the relief they claim to be entitled to; they have received the visas that they sought.

When – during the pendency of litigation – a plaintiff receives the relief that they sought in the complaint, the action becomes moot. Morehouse v. Jackson, 614 F. App'x 159, 163 (5th Cir. 2015) (unpubl.); Envtl. Conservation Org. v. City of Dallas, 529 F.3d 519, 530 (5th Cir. 2008); Humphrey v. Layton, 58 F.3d 636 (5th Cir. 1995) (unpubl.).

Any order of the Court – concluding that the Defendants violated the rights of the Business Plaintiffs – would be nothing more than an advisory opinion, which the Court cannot issue. Taylor v. U.S., 410 F.2d 392, 392 (5th Cir. 1969) ("We have no power to decide moot questions and we cannot give advisory opinions which cannot in any way affect the rights of litigants.").

Furthermore, this action does not fall under the "capable of repetition, yet evading review" exception to mootness. "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008). Even if the Court assumes that the Business Plaintiffs have satisfied the first prong of the test, they have not met the second prong.

There is no evidence in the record indicating that the Business Plaintiffs will file countervailing evidence petitions in the future.[6] The Business Plaintiffs filed those countervailing evidence petitions because the Department of Labor – over a 15 day stretch in March 2015 – refused to process any labor certification applications. The Department of Labor did this in response to a Court ruling; there is no evidence in the record that the Department of Labor will refuse to process any labor certification applications in the future. Given their inability to establish that the Business Plaintiffs will be subject to the same agency action again, the Plaintiffs cannot show that this case is "capable of repetition, yet evading review."

---

[6] Given the Court's resolution of the claims regarding the 2015 DHS/DOL rulemaking, which deleted any reference to the countervailing evidence provision, it appears unlikely that any business would be able to show that they will or should be able to legally file countervailing evidence petitions in the future.

Accordingly, because their claims are moot, the Business Plaintiffs should be dismissed from this action.

### 2. Business Plaintiffs Without Visas

The Business Plaintiffs who did not receive visas for their employees also lack standing to continue this litigation. As with the Business Plaintiffs who received their H-2B visas, those who did not receive the requested visas, also lack redressability, because the Court cannot grant them the relief that they seek.

As previously noted, the H-2B visa process is based upon fiscal years; USCIS has a statutory cap of how many H-2B visas can be issued within a single fiscal year. The petitions filed by these Business Plaintiffs were for the 2015 fiscal year. The Business Plaintiffs must file a new petition every fiscal year. 8 C.F.R. § 214.2(h)(9)(iii)(B).

USCIS has already reached its statutory H-2B visa cap for the 2015 fiscal year.[7] Any petition would be considered under the 2016 fiscal year cap. Id. There is no evidence in the record that any of these Plaintiffs applied for 2016 H-2B visas or that any such petition would be or has been rejected.

Given that the 2015 season has already passed, requiring USCIS "to reconsider or grant their applications would have no real life effect." G.H. Daniels III & Associates, Inc. v. Perez, No. 13-1479, 2015 WL 5156810, at *6 (10th Cir. Sept. 3, 2015), as amended (Nov. 5, 2015). "Any declaration that [USCIS's] actions with respect to those applications were improper would thus amount to nothing more than a retrospective opinion that [the Business Plaintiffs were] wrongly harmed by [USCIS] and would do nothing to affect the behavior of USCIS toward them." Id. The Court lacks jurisdiction to issue such opinions. Id.

Thus, even assuming that Business Plaintiffs's injuries can be established, that demonstration does not render them redressable. "It is trite, but true, that not every wrong has a remedy—much less a remedy wholly satisfactory to the purported victims." Vasapolli

---

[7] See USCIS Reaches H-2B Cap for the Second Half of Fiscal Year 2015 https://www.uscis.gov/news/uscis-reaches-h-2b-cap-second-half-fiscal-year-2015.

v. Rostoff, 39 F.3d 27, 30 (1st Cir. 1994).  Accordingly, the claims made by the Business Plaintiffs who were not issued H-2B visas should also be dismissed.

### 3. Agent Plaintiffs

The Agent Plaintiffs lack standing for the same reasons that the Business Plaintiffs lack standing: redressability.

The Agent Plaintiffs "represent the interests of employers requiring migrant workers." Int'l Labor Mgmt. Corp. v. Perez, No. 1:14CV231, 2014 WL 1668131, at *5 (M.D.N.C. Apr. 25, 2014) (holding that H-2B visa agents have standing to vindicate the rights of their clients under the APA).  This status, however, does not automatically create standing.

To the extent that the Agent Plaintiffs represent businesses that ultimately received visas, the claims are mooted because those clients received the relief they were entitled to. To the extent that the Agent Plaintiffs represent businesses that did not receive visas for the 2015 fiscal year season, the claims are moot because that season has ended.  Thus, the claims by the agents are supplanted by the actions of their principals.  As such, the claims made by the Agent Plaintiffs should also be dismissed.

### B. Regulatory Interpretation

Even assuming for purposes of discussion that any of the plaintiffs had standing to pursue this litigation, it would avail them nothing.  None of the plaintiffs have stated a claim upon which relief can be granted.

The crux of Plaintiffs' claims relates to the effect that the countervailing evidence provision had when they filed their applications for the 2015 season.  Plaintiffs assert that the countervailing evidence provision had full force and effect and that DHS acted unlawfully when it deleted that provision without notice and comment.  On the other hand, Defendants assert that the countervailing evidence provision had no legal effect and that its existence was an administrative oversight, for which reason Defendants were justified in deleting the provision without notice and comment.

As provided by U.S.C. § 553(b)(3)(B), DHS has the authority to issue a final rule without notice and comment if the agency finds on the record that "notice and public

procedure thereon are impracticable, unnecessary, or contrary to the public interest."  The analysis of whether notice and comment is unnecessary is "confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public." Mack Trucks, Inc. v. E.P.A., 682 F.3d 87, 94 (D.C. Cir. 2012).  As established by § 553(b)(3)(B), a final rule is not subject to notice and comment when it is a minor technical amendment. See Nat'l Nutritional Foods Ass'n v. Kennedy, 572 F.2d 377, 385 (2d Cir. 1978) (noting – pursuant to that section – the absence of notice and comment for "minor or merely technical amendment[s]").  Accordingly, agencies have the authority to make technical amendments to rules, without going through notice and comment. Chlorine Inst., Inc., 613 F.2d at 123.

In order to determine if the deletion of the countervailing evidence provision – in the instant case was a minor technical amendment – the Court examines the deletion, affording deference to the agency's interpretation as required by Auer.

The countervailing evidence provision is "a creature of [DHS's] own regulations." Auer, 519 U.S. at 461.  In such situations, in determining whether DHS acted unlawfully, the Court must consider whether the regulation is "ambigu[ous] with respect to the specific question considered." Belt v. EmCare, Inc., 444 F.3d 403, 408 (5th Cir. 2006).  If the regulation is ambiguous, "the agency's interpretation . . . is controlling unless plainly erroneous or inconsistent with the regulation." Id, (quoting Auer, 519 U.S. at 461).

In this case, the force and effect of the countervailing evidence provision is ambiguous.  On one hand, the regulation clearly states that "[i]f a petition is submitted containing a notice from the Secretary of Labor . . . that certification cannot be made, and is not accompanied by countervailing evidence, the petitioner shall be informed that he or she may submit the countervailing evidence in accordance with paragraphs (h)(6)(iii)(E) and (h)(6)(iv)(D) of this section." 8 C.F.R. § 214.2(h)(9)(iii)(B)(2) (2009).  Thus, the plain terms of this section of the regulation appears to create a method for petitioners to file a countervailing evidence petition.

This, however, does not end the inquiry.  The countervailing evidence provision

expressly cited paragraphs (h)(6)(iii)(E) and (h)(6)(iv)(D) as establishing the method and form for the countervailing evidence submission. Those paragraphs, though, make no mention of countervailing evidence petitions. Indeed, paragraph (h)(6)(iii)(E) directly contradicts the countervailing evidence provision by requiring that the petitioner "obtain[] a favorable determination from the Secretary of Labor" before filing an H-2B visa petition. 8 C.F.R. § 214.2 (h)(6)(iii)(E). Paragraph (h)(6)(iv)(D) also makes no mention of countervailing evidence and, instead, simply requires petitioners to provide employment start dates that are the same as stated on "the approved temporary labor certification." 8 C.F.R. § 214.2 (h)(6)(iv)(D).

The remainder of the relevant portions of the regulation makes it clear that an approved labor certification is required. See 8 C.F.R. § 214.2 (h)(6)(iii)(C) ("The petitioner may not file an H-2B petition unless the United States petitioner . . . has obtained a favorable labor certification determination"); 8 C.F.R. § 214.2(h)(6)(vi)(A) ("An H–2B petition shall be accompanied by . . . [a]n approved temporary labor certification issued by the Secretary of Labor"). Given the undeniable contradiction between the countervailing evidence provision and the remainder of the regulation, the regulation is ambiguous.

This ambiguity requires the Court to consider the second step in the analysis: whether USCIS's interpretation of its own regulation is plainly erroneous or inconsistent with the regulation. Belt, 444 F.3d at 408. The Court concludes that it is not.

As the Court just noted, the countervailing evidence provision appears to be at odds with the remainder of the regulation, which requires a favorable determination from the Secretary of Labor. There is no method by which the countervailing evidence provision can be read to be harmonious with the remainder of the regulation.

Indeed, at least two circuit courts have considered related claims, concerning the validity of DHS requiring an approved temporary labor certification from the Department of

18

Labor.[8]  See G.H. Daniels III, No. 13-1479, 2015 WL 5156810, at *3 (10th Cir. Sept. 3, 2015), as amended (Nov. 5, 2015); Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor, 745 F.3d 653, 669 (3d Cir. 2014).  In both cases, the circuit courts read and analyzed the regulation as requiring approval from the Department of Labor with no ability to petition DHS to approve the labor certification. Id.

The question before the Court is not whether the Plaintiffs' interpretation of the regulation is permissible, or even superior to DHS's. Decker, 133 S.Ct. at 1337.  Rather, the Court is required to determine whether DHS's interpretation is clearly erroneous. Id.  DHS's interpretation is not clearly erroneous, for which reason the Court must defer to it.  Since the Court must defer to DHS's interpretation, the Court finds that the deletion of the countervailing evidence provision was a minor technical amendment.[9]

The agency has clearly and reasonably interpreted the countervailing evidence provision to be at odds with the remainder of the section and to have no legal effect. 2012 DHS/DOL rules at 24050 (noting that the 2008 DHS rules clearly required petitioners to receive a favorable determination from DOL).  Under this interpretation, the countervailing evidence provision has no legal effect.  As such, deleting the provision was a housekeeping matter and did not affect the rights of the plaintiffs.  Further, because the provision was a nullity that granted Plaintiffs no rights, its deletion did not deny them any rights.

Accordingly, any claims regarding the countervailing evidence provision fail to state a claim upon which relief can be granted and should be dismissed.

---

[8] The Court notes that the Plaintiffs in these cases asserted that the temporary labor certification requirement constituted an impermissible delegation of authority by DHS.  The Plaintiffs in this case have not made such a claim.

[9] Auer appears to be a natural extension of the deference afforded to administrative agencies under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  Even if Auer deference is not required in this case, the Court must interpret the "regulation as a whole" and "in a manner that effectuates its central purposes." Anthony v. U.S., 520 U.S. 374, 380 (5th Cir. 2008).  In light of this mandate, the Court finds DHS's position – that the countervailing evidence provision had no effect and its continued existence was an inadvertent oversight – to be persuasive.

### C. Takings Claim

Plaintiffs have claimed that the failure to adjudicate the visa petitions constituted an unlawful taking, in violation of the Fifth Amendment.  Even if the Court assumes that standing exists, Plaintiffs again, have failed to state a claim upon which relief can be granted.

"A regulatory taking can occur in two ways: (1) when the regulation does not substantially advance legitimate state interests . . . or (2) when the regulation either denies the owner of all economically viable use of his property—a categorical taking—or unreasonably interferes with a property owner's rights to use and enjoy his property—a partial taking." Vulcan Materials Co. v. City of Tehuacana, 369 F.3d 882, 888 (5th Cir. 2004) (internal citations omitted).

The existence of a protected property interest is a prerequisite to any takings claim. Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par., 456 F. App'x 336, 341 (5th Cir. 2011) (unpubl.) (citing Severance v. Patterson, 485 F.Supp.2d 793, 803 (S.D. Tex. 2007), aff'd, 566 F.3d 490 (5th Cir. 2009)).

While the Plaintiffs have argued the economic impact – and interference with their businesses – created by the Defendants' actions, they have not pled facts to establish the threshold issue of whether they have a protected property interest in the visa applications or in the visas themselves.

As previously noted, voluntary entrants have no protectable property interest in arenas that are subject to pervasive Government control. Dennis Melancon, 703 F.3d at 272. Instead, when the Government has pervasive control over such an arena, the participants and potential plaintiffs have "a privilege rather than a property right." Id.

The Government has pervasive control over the admittance of aliens into this country. See Fiallo v. Bell, 430 U.S. 787, 792 (1977) ("over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." (internal quotation omitted)).  DHS has the statutory authority to establish and administer rules for the granting of visas to aliens. 6 U.S.C. § 202(4).  The approval of the petition is at the discretion of the

Government. 8 C.F.R. § 214.2(h)(9)(I).  USCIS has the authority to revoke approved visas. 8 C.F.R. § 214.2(h)(6)(i)(B)(1).  The Government's authority over H-2B visas "extends to such a degree that their holders possess, if anything, only a limited bundle of rights in connection therewith." Dennis Melancon, 703 F.3d at 272.  This leads to the conclusion that, despite their claims to the contrary,  Plaintiffs lack a protected property interest in either their H-2B visa applications or in their approved visas.

Given the failure to establish a protected property interest,  Plaintiffs have failed to state a claim upon which relief can be granted.  Accordingly, this claim should be dismissed.

## IV. Recommendation

It is recommended that the motion to dismiss filed by the Defendants, Dkt. No. 9, be granted.  It is further recommended that the case be dismissed without prejudice for lack of standing, or, alternatively, with prejudice for failure to state a claim upon which relief can be granted.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009).  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on February 3, 2016.

Ronald G. Morgan
United States Magistrate Judge

21